UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORREY MITCHELL,<br><br>    Plaintiff,<br><br>    v.<br><br>CRAMER, et al.,<br><br>    Defendants. | Case No. 23-cv-00141-JSW<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 12 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against officials at Salinas Valley State Prison ("SVSP"). After reviewing the complaint under 28 U.S.C. § 1915A, the Court concluded Plaintiff stated a cognizable First Amendment retaliation claim against Defendants Cramer and Meredith ("Defendants"). Defendants filed a motion for summary judgment. Plaintiff opposed the motion, and Defendants replied. For the reasons discussed below, the motion for summary judgment is GRANTED.

## BACKGROUND

Except where noted, the following facts are not in dispute.

Plaintiff arrived at SVSP in 2019 and was placed on the waitlist for a job assignment. On April 24, 2021, Defendant Meredith, an Assignment Lieutenant, assigned Plaintiff to a job as a teacher's aide in a class entitled "Electrical Works." On September 24, 2021, Plaintiff filed an administrative grievance complaining that he was never "called" to do this job and had not received pay, time credits, or a time-card, because there was no instructor and no students in this class.

Defendant Cramer, at the time the Assistant Principal of Academic Instruction, reviewed and investigated the grievance on October 25, 2021. He discovered the class to which Plaintiff

1   was assigned had been closed in January 2020 because there was no instructor. Cramer emailed

2   Meredith instructing him to un-assign Plaintiff from the class because it was closed. Meredith un-

3   assigned Plaintiff, and he discovered that due to an administrative error, the class had not been

4   listed as closed in the prison's job assignment system when Meredith assigned Plaintiff to it in

5   April 2021.[1] Meredith corrected this error and closed the job in the system.

6       Plaintiff alleges Defendants "well understood" the class had no instructor when he was

7   assigned to the class in April 2021. (ECF No. 1 at 7.) However, there is no evidence Defendants

8   knew prior to investigating Plaintiff's grievance in October 2021 either that there was no

9   instructor or that the class was closed. Both Defendants state in their declarations they learned the

10  class was closed once they investigated the grievance.

11      On October 26, 2021, after Plaintiff was un-assigned from the teacher's aide position,

12  Cramer met with Plaintiff. According to Plaintiff, Cramer told him "[d]ue to" the administrative

13  grievance Plaintiff had filed, Cramer "contacted Defendant Meredith [] and had Plaintiff removed

14  from the Teacher's A[ide] position." (*Id.* at 9.) Plaintiff also alleges Cramer told him, "I would

15  try to do something to get you another job assignment but you are going to have to stop doing

16  this" and pointed to Plaintiff's grievance. (*Id.* at 10.) Plaintiff further alleges that when he stated

17  he had a right to file a grievance, Cramer said, "Okay Mr. Mitchell take that route and see how far

18  it gets you." (*Id.*)

19      Once Meredith un-assigned Plaintiff from the teacher's aide position, Plaintiff became

20  eligible for any of eleven positions for which he was wait-listed. Meredith states that once a

21  "suitable" position became available (as a clerk), Meredith assigned Plaintiff to it on March 30,

22  2022. (ECF No. 12-In September 2022, Plaintiff received a ten-point reduction in his

23  classification score instead of the maximum 12-point reduction.

24      //

25      //

26

---

[1] Defendants present evidence detailing how this error occurred. These details are not recited here because they are uncontradicted by any evidence, Defendants were not involved in the error, and how the error occurred is not relevant to any of elements of the retaliation claim.

2

**DISCUSSION**

**I.	Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*  "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014).  A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (where nonmoving party's direct evidence raises genuine issues of fact but is called into question by other unsworn testimony, district court may not grant summary judgment to moving party on ground that direct evidence is unbelievable).

**II.	Analysis**

    1.	Defendants' Unassigning Plaintiff From Teacher's Aide Position

Plaintiff claims that Defendants relieved him of teacher's aide position in retaliation for his

3

filing the administrative grievance. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). A prisoner may not be retaliated against for using such procedures. *Id*. at 567.

### a. Adverse Action

There is no evidence that unassigning Plaintiff from the teacher's aide position was adverse. It is undisputed that the position was closed, that Plaintiff had been assigned to it in error, and that because it was closed he was already not called into work or receiving pay or the other work benefits before he was unassigned. Unassigning him did not change this. Rather, unassigning Plaintiff from the teacher's aide position freed him up to be assigned to another position that was open and for which he could get called into work and be paid.

Plaintiff asserts "he was informed by Classification Committee Action" that his security classification score was reduced by 10 instead of 12 points because he was unassigned from the closed teacher's aide position. (ECF No. 17 at 11 ¶ 7; *see also* ECF No. 1 at 9 ¶ 24.) The evidence he cites, however, i.e. the classification committee report, does not show that to be the case. That report indicates Plaintiff's score was reduced by 10 points, notes he had no disciplinary violation reports ("RVR"s), and notes he had a job assignments as a teacher's aide between April and October 2021 and as a clerk in March 2022. (ECF No. 1-1 at 18.) The report does <u>not</u> state that his being unassigned from the closed teacher's aide position caused his score to be reduced by 10 instead of 12 points. Plaintiff cites no prison regulations or other evidence showing his classification score was not further reduced because he did not remain erroneously assigned to a position that did not exist and for which he could do no work. Nor can a fact-finder reasonably infer from the report that to have been the case. As a result, a reasonable fact-finder cannot conclude based upon the evidence presented that Plaintiff suffered any adverse consequence from being unassigned from the closed teacher's aide position.

b. <u>Causation</u>

There is also no evidence reasonably supporting a finding that Defendants' unassigned Plaintiff "because" he exercised his First Amendment right to file administrative grievances. Rather, the evidence is uncontradicted that he was un-assigned because the job did not exist. The fact that this un-assignment occurred in response to Plaintiff's grievance does not, on its own, reasonably suggest that it was because Plaintiff filed administrative grievances, sought to redress his problems, or exercised his First Amendment rights, as opposed to the non-existence of the job, that Plaintiff was unassigned. The evidence is uncontradicted that Defendants first learned Plaintiff was not being called into work or receiving pay or other benefits of a job when Cramer received the grievance, that Cramer immediately investigated the problem and discovered for the first time[2] that Plaintiff was assigned to a job that was closed, that Meredith first learned about it when Cramer told him about his findings, that Meredith immediately investigated and discovered that administrative error had caused the job to be incorrectly listed in the job assignment system as still open, that neither Defendant was involved in that error, and that Meredith, upon discovering the error, immediately closed the job listing on the system. Further, the evidence is undisputed that unassigning Plaintiff from the position was a necessary step in getting Plaintiff a new position, and that Meredith assigned him to a new position several months later. There is no evidence that if the job listing had been open, Defendants would have nonetheless unassigned Plaintiff simply because he filed the grievance. The only reasonable inference that can be drawn from the evidence is that Defendants unassigned Plaintiff from his position because they learned he was inadvertently assigned to a closed position, not because he exercised his First Amendment right to file an administrative grievance.

Plaintiff's allegation of statements by Cramer on October 26, 2021, not to keep filing grievances do not create a triable factual issue regarding whether Plaintiff was unassigned because

---

[2] Plaintiff's allegation that it was "well understood" by Defendants that the job was closed at the time of Plaintiff's assignment, is mere speculation insofar as it is not supported by any evidence. This allegation is also the evidence that Defendants did not know the job was closed until after Plaintiff filed his grievance, and that the job assignment system had erroneously indicated the job was open at the time Meredith assigned him to it.

5

of the grievance. First, Cramer's alleged statements are irrelevant to Meredith's motives. Second, they are hearsay. Third, as alleged, these statements relate to Plaintiff getting a new job assignment, not to his being unassigned from his prior position. Fourth, in light of the undisputed evidence that the class was closed, no reasonable inference could be drawn that Plaintiff was unassigned because of the grievance as opposed to because the class did not need any teachers.

                c.        Legitimate Penological Goal

Furthermore, unassigning Plaintiff from a position that was not in fact open and was only listed as open due to administrative error served the legitimate penological purposes of not having inmates assigned to jobs that do not exist and of fixing inadvertent administrative errors in the prison's job assignment system. There is no triable issue, therefore, as to whether unassigning Plaintiff from the teacher's aide position failed to serve a legitimate penological goal.

    2.        Failure to Assign Plaintiff to New Position Sooner

Plaintiff also argues Defendants retaliated against him by not assigning him to a new job position until March 2022.[3] First, as to Defendant Cramer, there is no evidence she had authority to assign positions to inmates or played any role in their assignment. The evidence indicates Cramer was a Vice Principal of Academic Instruction, from which it can be reasonably inferred that she *supervised* inmates assigned to academic positions, but not that she assigned them to those jobs. Indeed, Meredith was the "Assigning Lieutenant" and undisputedly responsible for inmate job assignments.

There is no evidence, however, that Meredith failed to assign Plaintiff to a new position because of his administrative grievance. Meredith states in his declaration that he was not aware of the grievance and had no role in reviewing or deciding it. (ECF No. 12-2 ¶ 12.) In any event, there is no evidence he delayed in assigning Plaintiff a new position. The evidence is

---

[3] In the Order of Service, the Court found that Plaintiff had not alleged an independent adverse action arose from Cramer's alleged statements on October 26, 2021. The reason for that conclusion was that Plaintiff alleged he received a new position. In light of Plaintiff's arguments and upon further consideration, the Court finds Plaintiff did *allege* an independent adverse action, i.e., failing to assign him a new position *sooner* than March 2022. However, for the reasons discussed below, there is no triable factual question that Defendants failed to do so because of his grievance.

6

uncontradicted the first step to get Plaintiff a new position was to unassign him from the closed teacher's aide position, which Meredith did as soon as he discovered it was closed. This action immediately made Plaintiff eligible for 11 positions for which he was wait-listed. There is no evidence Defendants prematurely removed him from any of these waitlists, prevented him from getting on any additional waitlists for which he was eligible, or that any positions for which Plaintiff was eligible and qualified for from these waitlists became available prior to March 2022. Plaintiff argues Defendants have not presented evidence that there was no suitable position available sooner. They have presented such evidence: Meredith's sworn statement to this effect. (*Id.* at ¶ 8.) It is Plaintiff who has presented no evidence that any position for which he was eligible was open sooner. He alleges in his complaint that he could have been assigned to pick up garbage, but there is no evidence such a position was available before March 2022 or, if one was, that he was qualified or eligible for it. Consequently, there is no triable factual question as to whether the failure to assign him to a new job sooner was an adverse action caused by Plaintiff's filing his administrative grievance.

### 3. Reducing Plaintiff's Classification Score

Plaintiff also argues in his opposition Defendants retaliated against him by giving him a 10-point classification reduction instead of the maximum 12-point reduction. There is no evidence Defendants, who were the Assistant Principal of and the Assignment Lieutenant, respectively, were involved in setting Plaintiff's security or classification score.

\*           \*           \*

There are not triable questions as to whether Defendants took any adverse actions because of Plaintiff's filing his administrative grievance. Consequently, they are entitled to summary judgment on his First Amendment retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' summary judgment motion is GRANTED.

The clerk shall enter judgment and close the file.

This order resolves docket number 12.

**IT IS SO ORDERED.**

Dated: February 2, 2024

_____
JEFFREY S. WHITE
United States District Judge